582

Modified and remanded.

35 C.C.P.A.(Patents)

## Application of WEST.
### Patent Appeal No. 5387.

Court of Customs and Patent Appeals.

March 2, 1948.

Daniel Stryker and W. P. Epperson, both of New York City, for appellant.

W. W. Cochran of Washington, D. C. (J. Schimmel of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

The Board of Appeals of the United States Patent Office having affirmed the Primary Examiner's rejection of the three claims numbered 1, 2, and 3 (being all the claims) in appellant's application for a patent relating to alleged improvements in a process for the production of motor fuel, "particularly aviation gasoline," and an apparatus for carrying out the process,

this appeal was taken seeking review and reversal of the board's decision.

In the brief on behalf of appellant notice was given of the withdrawal of the appeal as to claim 1 and at the oral hearing motion to dismiss the appeal as to that claim was entered. The motion is hereinafter formally granted.

Of the remaining two claims, No. 2 is for an apparatus and No. 3 is for a process. We reproduce both:

"2. Apparatus for the production of motor fuel from isobutane and olefins by reaction in the presence of strong sulfuric acid comprising a reaction zone provided with means for causing intimate admixture of acid and hydrocarbon and with means for passing said mixture repeatedly over cooling surfaces, a separating chamber, elevated with respect to said reaction zone and communicating therewith by a free and open conduit extending from the bottom of said separating chamber to the reaction zone and a second conduit extending from a midpoint of said separating chamber to the reaction zone, and means for introducing isobutane, olefins and strong sulphuric acid directly to said reaction zone.

"3. In the production of motor fuel by the alkylation of isobutane with olefins in the presence of strong sulfuric acid, the improvement which comprises continuously removing reaction mixture from a reaction zone into which isobutane, olefins and strong sulphuric acid are directly introduced and in which is maintained an intimate admixture of acid and hydrocarbon, introducing said withdrawn mixture into a separating chamber elevated with respect to the reaction chamber, continuously withdrawing separated acid from the lower portion of said separating chamber and returning it to said reaction zone, the flow from said reaction zone to said separating chamber and from said separating chamber to said reaction zone being caused by difference in specific gravity of the reaction mixture and the separated acid."

References were cited as follows:

Watson, 1,952,694, March 27, 1934,

Lieseberg, 2,153,578, April 11, 1939,

Altshuler et al., 2,238,802, April 15, 1941.

It is believed that the apparatus described in claim 2, supra, can be visualized readily from a careful reading of the claim itself and that the process depicted in claim 3, supra, requires little or no explanation. So, no elaboration or detailed analysis of the claims will be given.

The Altshuler et al. patent is the principal reference, the others being referred to as auxiliary or secondary references. It teaches the alkylation of isobutane by the use of olefins, the treatment being administered in the presence of a strong sulphuric acid catalyst while the liquid is flowing in a circuit. In the circuit and constituting parts of it are a reaction vessel or chamber, designated as a "contractor," and a separator which is on substantially the same level as the reaction vessel. The reaction vessel has an outer shell and an inner shell, the latter spaced apart from the former. Near the top of the inner shell there is a battery of cooling tubes and near the bottom an impeller which keeps the acids and hydrocarbons that are introduced into the circuit mixed and which causes the mixture to circulate, first downwardly within the inner shell, then upwardly in the space between the shells, thence over the cooling tubes and downwardly to the lower end, and the mixture (from which there have been withdrawals and to which fresh materials have been added) is recycled over the circuit. So, the circulation is continuous. Acid and hydrocarbons are introduced through pipes as required, and the reacted mixture, when it has reached the desired condition, is passed from the reaction vessel through a pipe which conducts it into the separator where the acid is separated from the mixture and such of it as is still usable is returned to the reacting vessel for further use, the alkylated product being conveyed from the separator through another pipe.

As has been indicated, the Altshuler et al. separator is not elevated above the reaction vessel. From the drawing it appears to be positioned somewhat below the center of the vessel, and it was held by the examiner that this matter of position constitutes the only feature of the appealed claims not disclosed by the Altshuler et al.

patent standing alone. Upon this phase of the controversy the board said:

"* * * As the Examiner points out, the Altshuler et al. patent relates to the same art as the present invention and shows every element of the appealed claims with the sole exception that the separator of Altshuler et al. is not at a higher level than the reactor. The purpose for which the secondary art was cited was to show that it is not new with the appellant to elevate the separating zone with respect to the reactor for the purpose of eliminating the pump of Altshuler et al since Lieseberg recognized that a pump is unnecessary in an arrangement such as he shows and as herein claimed."

The claims of the Lieseberg patent are for a process of manufacturing acetaldehyde from gases containing acetylene. An apparatus for performing the operation is shown by drawings and described in the specification. A tower is disclosed which is designated "Reactor." A chamber designated "Separator," from which pipes extend, is on top of the reactor. Gaseous acetylene is introduced into the bottom of the reactor through one line, or pipe, and an acid which functions as a catalyst through another. The mixture which is partly gas and partly liquid rises upwardly into the separator where the catalyst separates from the acetaldehyde product and from such of the gas as is unreacted and is recycled through an overflow line. It passes by gravity into a chamber designated "Revivification Chamber," and thence down a pipe through which it again enters the bottom of the reactor. It moves thence through another circulation over the same circuit. According to the specification, as we understand it, the necessity for a pump to cause a flow is obviated by the difference in specific gravity between the recycled catalyst and the other substances in the reaction chamber.

The Watson patent also relates to a mixture of gaseous and liquid substances. All the claims of this patent are for an apparatus. Two forms are illustrated by drawings and described in the specification. The apparatus is for the treatment of hydrocarbon oils and vapors "by polymerizing agents or chemical reagents to refine them."

A reservoir is disclosed in which a body of liquid is maintained. Cases, or vapors, are introduced into the liquid and the gases entrain molecules of the liquid. It is taught that this has the effect of lowering the specific gravity of the mixture so that it passes upwardly, without pumping, through a tube into a separator positioned above the reservoir and also above a "settling" chamber designed to be a collecting tank for sludge, spent reagent, etc., as well as for more desirable liquid components, all of which flow downwardly by gravity from the separator into the settling chamber.

It will be observed that in both the Lieseberg and Watson patents the mixture in the reaction chamber and separator is composed of gas and liquid. In the brief for appellant it is claimed that his mixture contains no gas. The brief states:

"Appellant has no gas or vapor in his liquid filled system. Obviously, appellant does not and could not utilize the gas-lift operation of either Lieseberg or Watson. The only liquid-liquid separating chamber in either of the secondary references is the acid sludge settling chamber 12 * * * or 32 * * * of Watson, and this is not elevated with respect to the reaction zone. Neither of the secondary references teaches that liquid-liquid separation in an elevated settler can be used to supply the controlling motive force to elevate liquid from a lower reaction zone to the elevated liquid settler, which is the essence of the present invention. It is thus seen that the secondary references fail completely to teach the principle of the present improvement in settling operation which distinguishes from the conventional practice of Altshuler et al."

We quote the following from the brief of the Solicitor for the Patent Office (omitting references to pages of brief and record):

"Appellant's chief contention with respect to these secondary references is that they disclose and operate only on the well known "gas-lift" principle * * *, and that they have no concept of utilizing the difference in specific gravity of the materials in the two chambers for lifting or elevating the reactions mixture from the re-

actor to the separator. As pointed out in the preceding paragraphs, both references speak of a lowering of the specific gravity of the mixture in the reactor, Lieseberg relating the rapidity of circulation to the lower specific gravity * * * and Watson distinctly stating that the lowering of the specific gravity causes the mixture to pass upwardly * * *. Moreover, it should be noted that one of the reactants appellant utilizes in the process is a gas. The olefine portion of the reaction mixture, specifically the butylenes * * * are gases at ordinary temperatures. Hence, it would appear that, depending upon the amount of olefine used, some "gas-lift" effect would be present in appellant's operation and would be a contributing force in circulating the reaction mixture to the separator."

With the notice of appeal to this court appellant submitted twenty-four reasons of appeal and the brief before us states that appellant "relies on each and every one of these." This seems to be something of an overstatement, however, because in one reason of appeal (No. 4) there is a direct challenge of the correctness of the board's holding to the effect that the Altshuler et al. patent (1) relates to the same art as the appealed claims and (2) that it shows every element of the claims except "that the separator of Altshuler et al. is not at a higher level than the reactor," but the brief for appellant states, "it is agreed that this [the Altshuler et al. patent] reference relates to the same art as the present application, as pointed out by the Examiner * * * and by the Board * * * and represents the prior practice in that art." This clearly is a concession that finding (1), supra, of the board is correct, but we do not construe it to be a concession that the assertion that the Altshuler et al. patent shows every element of the claims except the positioning of the separator above the reactor is correct, although appellant, after making the concession with respect to the Altshuler et al. patent being in the same art as the claims, had little more to say concerning that patent but leveled his fire at the alleged deficiencies in disclosure of the secondary references. This was done upon the theory that, as further stated in

his brief, the issue "boils down to the question as to whether the secondary references to Lieseberg and Watson teach such modification of Altshuler et al. as to make the subject matter of appealed claims 2 and 3 obvious to those skilled in the art to which the present application relates."

The brief on behalf of appellant is an elaborate one, the matter particularly emphasized, so far as the process claim is concerned, being that embraced in the concluding clause of claim 3 reading, "the flow from said reaction zone to said separating chamber and from said separating chamber to said reaction zone being caused by difference in specific gravity of the reaction mixture and the separated acid."

As we view it, this clause amounts to nothing more than the statement of a result which follows separation of the materials as defined in the preceding portion of the claim. The clause does not itself define a process. It is in effect a whereby clause, and the process by which the result is obtained does not seem to us to embrace any step not taught in the prior art, when the elevated feature shown, for example, by Watson, is combined, as properly it may be, with the process taught by Altshuler et al.

So much for the process claim—No. 3, supra.

Appellant's principal contention with respect to claim 2, supra—the apparatus claim—relates to the limitation describing a second conduit as extending from a midpoint of the separating chamber to the reaction zone. It is said in the brief for appellant that this form of structure whereby the mixture is introduced at the midpoint of the separator "avoids disturbance of and remixing with the partially settled liquid layers above and below this [a previously described] intermediate zone," and that this difference from the prior art is functionally important. It is conceded in the brief of the Solicitor for the Patent Office that the second conduit would not be shown by combining either Lieseberg or Watson with Altshuler et al., but it is pointed out in the brief that the second figure of appellant's drawing "illustrates a form of device and operation which

would be identical with the modification of Altshuler et al. by Watson or Lieseberg, as proposed by the examiner, which modification is disclosed [in the specification] as possessing all the advantages of that defined in claim 2." From this the solicitor contends:

"* * * No real or patentable distinction between these forms is described in appellant's specification, and since the form of figure 2 incorporates the essence of appellant's operation, it is submitted that no patentable merit exists in such minor detail of construction as the second conduit set forth in this claim."

Appellant's contentions have been carefully studied, but we are not convinced that the appealed claims present matter patentable over Altshuler et al. in view of Lieseberg or Watson.

The appeal is dismissed as to claim 1, and the decision of the board is affirmed as to claims 2 and 3.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.